JAMES D. CARTON, trustee, &c., respondent,

*v.*

ELLSWORTH BOOZE and CATHARINE THORNE, appellants.

[Submitted March 27th, 1905. Decided November 20th, 1905.]

In an action by the trustee of a bankrupt to set aside a conveyance of land by the bankrupt to his sister more than four months prior to the filing of the petition, evidence examined, and *held* sufficient to sustain the conveyance as a mortgage to secure a part of the moneys claimed to have been loaned by the sister to the bankrupt, but insufficient to support it as an absolute deed.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Reed, who filed the following conclusions:

This is a suit brought by a trustee in bankruptcy of Ellsworth Booze, a voluntary bankrupt, to set aside a deed made by the bankrupt to his sister.

The petition upon which Ellsworth Booze was adjudicated a bankrupt was filed by him on August 22d, 1902.

The deed attacked was executed on January 24th, 1902, more than four months before the petition was filed. The deed was made to Catharine Thorne, for the expressed consideration of one dollar and other valuable consideration.

Both Catharine and Ellsworth claim that the deed was made in consideration of the sum of $4,800 and interest, the $4,800 being money loaned by her to him and unpaid at the time of the execution of the deed. They both swear that she loaned him $1,000, in 1882, to pay his way through the college of pharmacy for that year; that she loaned him another $1,000 in 1883 to pay for his second year's course in the same institution; that she loaned him $2,500 in 1884 to set him up in the drug business in Trenton, and that finally she loaned him $300, in September, 1901, for his personal use, when the bottling com-

pany, in which he was interested, and in which he had put $2,500 in cash, which he had raised by mortgage upon his property, became embarrassed.

Catharine produces a memorandum on which she says she entered the time and amounts of the loans at the date upon which they were made. This memorandum, however, has no evidential value .whatever. It appears that at the time when Ellsworth concluded to study pharmacy he was employed in his father's grocery store in the city of Trenton. Catharine assigns as the reason why Ellsworth did not apply to his father for the money he needed was that the father did not wish Ellsworth to study pharmacy, but instead wished him to remain in the grocery business. Therefore, because of his father's attitude, Ellsworth applied to her for the money to carry out his purpose. Catharine says that she got $1,000 from her father without telling him the purpose for which she wished it, and loaned that sum to Ellsworth in 1882. That she repeated this act in 1883 and in 1884 she got the $2,500. This sum she says her father owed her; that he owed her exactly $4,500.

Her account of the manner in which her father became indebted to her in this sum of $4,500 is quite curious. She says that her father gave her $4,500 about twenty or twenty-three years ago. She says, "He felt that he had done for the others a great deal; my older brother and this one—I had an older brother—he had done so much for him; given him so much money that I knew nothing about, he gave it to me as a present." She says that he gave her $4,500 all at one time in bank notes. She says that she kept it in her pocketbook at home. She says that not a great while after this her father wanted it back again—wanted to pay some debts that he owed and that he borrowed the whole $4,500 for that purpose, and that she gave him the same notes which she had received from him.

It is true that Herman Booze appears to have been illiterate; he signed his will, as well as mortgages, by his mark. He also appears to have been in the habit of keeping considerable sums of money concealed about the house. His widow, an old lady now seventy-nine years of age, testifies to this, and says that he was distrustful of banks and only put his money in bank when

he had several thousand dollars. All this is, of course, important in judging of the probability of his having $4,500 in his possession at one time and passing this sum over to his daughter, and then, almost immediately, receiving it back again. There is, however, nothing to show the source of so large a sum. It is not shown that about this time he was concerned in any transaction by which he realized a large amount of money. His widow says that he received money from the sale of lands to one Buckley, but that this was after he gave the money to Catharine. He undoubtedly received money from the city of Trenton from land taken by condemnation in the opening of Willow street, but when this occurred, or how much he received, does not appear.

If he gave this money to Catharine the gift must have been made in 1882, for she says that she loaned the first $1,000 to Ellsworth in September of that year, and the gift to her and the return of the money to her father took place not long before.

Now, it appears that on October 5th, 1881, Mr. Booze had paid off a mortgage of $1,600 which had been in existence from 1872; there still remained a mortgage of $700, which had been in existence since 1880. This mortgage he afterwards paid, on January 11th, 1883. If he had in his possession, in 1882, $4,500, it is certainly remarkable that a man so thrifty should have left this mortgage standing, accumulating interest, until the following year.

Again, according to Catharine's testimony, he told her that he wished the money returned because he wished to pay off some debts. The only debt he appears to have paid is the mortgage of $700, paid in 1883. Nor does he appear to have purchased any property about that time.

Again, she says that the reason he gave for making this gift to her was "that he done so much for the boys." It does not appear that he had done anything for Ellsworth, who was working in his father's grocery store, beyond what he had done for his other children, especially for Catharine, who, as I gather from the remark of the widow, was, although married, still living at home with her parents in 1882.

It may be that the father did give Catharine some money about that time. The widow says he did so and told Catharine to buy a home. If he did so, he changed his mind and resumed possession soon after. Her return of this money to him is as likely to have been a gift to him as a loan.

Another theory, quite as probable, I think, is that he handed the money to her to keep, as a member of his household, and asked for the money afterwards, not as a loan, but as his own property.

Again, the will of Herman Booze, so far as appears, left Catharine and Ellsworth about the same amount of property. If he had given her $4,500 and Ellsworth nothing, it is strange he did not adjust this in making his will.

I have no doubt that by the understanding of all the parties the money which Ellsworth received was, in great part at least, regarded as an advancement by the father. Some of it, I think, passed through the hands of Catharine. She says that her father did not wish Ellsworth to abandon the grocery business and embark in the drug business. She very likely interceded with her father and procured from him the money for Ellsworth's education. It is, however, impossible to believe that the father did not know for what purpose the money was used, at least after Ellsworth had left the store and begun his studies. He knew that Ellsworth had no money of his own, and that some one was furnishing the money for him. He might not have known the purpose, when the first $1,000 was obtained, but thereafter he must have known, and perhaps not desiring to recognize directly the conduct of his son, paid the expenses of the second year and the expense of equipping the drug store indirectly. That he furnished the money for the latter purpose was evidently the understanding in the family, for the widow says "he governed the drug store," and she thinks the father furnished the money for it. Now, the father may have given the first $1,000 to Catharine to do as she chose with it, but I am confident the other sums were paid to her, if at all, for the purpose of paying his son's expenses, and not in repayment of any money he owed her.

With some hesitation, I am inclined to allow the deed to stand as a mortgage for the payment of the first $1,000, with interest, from September, 1882, and for the payment of the $300, with interest, from September, 1901. Even this claim is so stale and unevidenced by any note or due-bill, made at the time of the alleged loans, with no effort to get a later acknowledgment, when Ellsworth started his store, and when, two years afterwards, he failed in business, or any effort to get any security for it, after the death of the father, ten years ago, when Ellsworth came into possession of his property under the will, that, as I have already observed, it is with hesitation that I have concluded to recognize it. The defendant being a woman and trusting her brother, may account for this conduct.

I will advise a decree as above indicated.

*Mr. Wesley B. Stout* and *Mr. Alan H. Strong,* for the appellants.

*Messrs. Guild & Martin,* for the respondent.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons set forth in the opinion filed in the court of chancery by Vice-Chancellor Reed.

FORT, J. (dissenting).

In this case I vote to reverse, not because the vice-chancellor has allowed the defendant too much in the decree below, but because he has not allowed her the entire claim which she made by her answer.

The evidence of the defendant and her witnesses was unimpeached, and I am unable to see why they should be discredited. To me there is nothing unreasonable or improbable in the story the defendant tells; when you take into account the circumstances surrounding the alleged gift by her father and her loan to her brother.

I think, under the proof, a decree in accordance with her claim should have been made.

The decree below only allows her some $1,300 of the $4,800 of money due her and secured by the deed which the complainant's bill seeks to avoid. I think the deed should have been allowed to stand as security for the whole amount claimed by the defendant.

*For affirmance*—THE CHIEF-JUSTICE, GARRISON, GARRETSON, PITNEY, SWAYZE, BOGERT, VREDENBURGH, GREEN, GRAY —9.

*For reversal*—DIXON, FORT—2.